**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CARL S. EY, | ) | |
| 4700 Brookside Drive, | ) | |
| Alexandria, Virginia 22312, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-1733 |
| | ) | |
| THE OFFICE OF THE CHIEF | ) | |
| ADMINISTRATIVE OFFICER | ) | |
| OF THE UNITED STATES | ) | |
| HOUSE OF REPRESENTATIVES, | ) | |
| | ) | |
| SERVE ON: | ) | |
| The Honorable Dan Strodel, | ) | |
| Chief Administrative Officer, | ) | |
| The Capitol, HB-30, | ) | |
| Washington, D.C. 20515, | ) | |
| | ) | |
| Ronald C. Machen, Jr. Esquire, | ) | |
| United States Attorney for the | ) | |
| District of Columbia, | ) | |
| 555 4th Street, N.W., | ) | |
| Washington, D.C. 20530, | ) | |
| | ) | |
| Eric H. Holder, Jr. Esquire, | ) | |
| Attorney General of the United States, | ) | |
| U.S. Department of Justice, | ) | |
| 950 Pennsylvania Avenue, N.W., | ) | |
| Washington, D.C. 20530-0001, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>COMPLAINT</u>

COMES NOW the Plaintiff, Carl S. Ey ("Plaintiff" or "Mr. Ey"), by and through

undersigned counsel, pursuant to the Congressional Accountability Act, 2 U.S.C. § 1301, *et seq.*

(the "Act"), hereby brings suit against his former employer, The Office of the Chief

Administrative Officer of the United States House of Representatives (the "CAO"), due to the age, gender, and disability-based discrimination he experienced that resulted in his wrongful termination as Director of Business Continuity and Disaster Recovery. As and for his complaint, Mr. Ey says as follows:

### Parties and Jurisdiction

1.    Mr. Ey is a retired Lieutenant Colonel from the United States Army, and an adult resident of the Commonwealth of Virginia. He is over 45 years of age. During his time in the Army, he served in various overseas deployments, including, but not limited to, Operation Enduring Freedom in Afghanistan. Mr. Ey is a combat veteran. Mr. Ey was also given the solemn duty of personally informing the families of fallen servicemen and women of their loss. At the time Mr. Ey retired from active duty, he had received the Bronze Star and the Legion of Merit. Mr. Ey is medically rated as 100% service disabled.

2.    The CAO is a subdivision within the U.S. House of Representatives. The CAO provides operations support services and business solutions to the community of over 10,000 House Members, officers, and staff.

3.    Jurisdiction is vested in this Court pursuant to the Act. *See* 2 U.S.C. § 1408(a); *and see* 2 U.S.C. §§ 1311, 1404. Mr. Ey has exhausted his administrative remedies, and has completed the counseling and mediation requirements mandated by the Act for all claims set forth herein.

**Factual Allegations**

I.      **Mr. Ey's Job and Performance.**

4.      From January 10, 2011 to May 18, 2012, Mr. Ey served as the Director of Business

Continuity and Disaster Recovery under the CAO. In effect, Mr. Ey's job was to

ensure that the House of Representatives would be able to continue to function

without significant interruption following a natural disaster, military strike, act of

terror or other material disruption.

5.      Mr. Ey managed a staff that included two (2) House Services employees and five (5)

private contractors provided by Booz Allen Hamilton ("Booz Allen") pursuant to a

federal contract (the "Booz Allen Contract").

6.      During his tenure at the CAO, Mr. Ey received one (1) performance evaluation report.

The report rated Mr. Ey's job performance as "excellent," which is the highest rating

achievable.

7.      On February 22, 2012, Mr. Dan Strodel, the Chief Administrative Officer of the

CAO, issued a letter to Mr. Ey commending him on his performance of his duties and

informing Mr. Ey that he would be receiving a raise as a result of his performance.

CAO Chief Information Officer Nelson Moe, Mr. Ey's direct supervisor at the time,

delivered the letter to Mr. Ey, in which Mr. Moe also acknowledged Mr. Ey's

excellent performance and Mr. Moe shared his opinion that the raise was well

deserved.

8.      At no time did anyone at the CAO inform Mr. Ey that his job performance was not

satisfactory, or anything other than what was stated in his performance evaluation

report and Mr. Strodel's letter.

2198696v.1

**II.      Ms. Stacy Carlson Joins the CAO.**

9.      In or around February of 2011, Ms. Stacy Carlson was appointed as Deputy Chief

Administrative Officer of the CAO by Speaker of the House, Rep. John Boehner. Ms.

Carlson's job largely entails serving as the CAO's chief operating officer, and

supervises the entire office. Upon information and belief, Ms. Carlson is slated to

replace Mr. Strodel.

10.     Upon joining the CAO, and at all times material hereto acting within the scope of her

employment with the CAO, Ms. Carlson began "cleaning house," by targeting men,

especially older, strong-willed men with military backgrounds, for termination and

replacement.

11.     Specifically, Ms. Carlson asked discriminatory and inappropriate questions of certain

male employees to garner bases for eventual termination.

12.     In August of 2011, Ms. Carlson, with Mr. Strodel present, asked Mr. Ey for details of

the nature and extent of his rated, service-related disability.

13.     After the exchange concerning Mr. Ey's service-related disability, and without any

basis to do so based on performance, Ms. Carlson removed a host of responsibilities

from Mr. Ey's position pursuant to a purported "reorganization."

14.     Since Ms. Carlson joined the CAO, at least ten male employees, all above the age of

45, have been terminated or forced to resign from the CAO. At least three of these

men had military backgrounds. On information and belief, these terminations and/or

resignations were the direct result of Ms. Carlson's efforts to remove older, strong-

willed males from the CAO for discriminatory reasons.

### III.     Bidding on Booz Allen's Contract.

15.     In 2012, the Booz Allen Contract came up for bid. Originally, the Booz Allen

Contract was supposed to be awarded in April of 2012, but the Office of the Chief of

Procurement pushed the award date back to June 13, 2012.

16.     Mr. Ey was a member of the panel charged with recommending which bid should be

accepted. The other members of the panel were Jim Tiani, Megan Perez, Sarah

Parker, Ban LaGasse, and Tim Wright. During the review process, Mr. Tiani was

replaced by Toni Bridgeforth.

17.     On April 24, 2012, the panel recommended against awarding Booz Allen the entire

contract. Instead of all five contractor slots being awarded to Booz Allen, the panel

recommended that three be awarded to Booz Allen, and the other two slots be

awarded to two other bidders.

18.     After the panel's recommendation, Ray Griswold, the Deputy Chief of Procurement

of the CAO, met with the panel. Mr. Griswold stated that Booz Allen should be

awarded the entire contract as the "best value" on the basis that Booz Allen came in

second for the two slots awarded to the other contractors. Some members of the panel

vocally agreed with Mr. Griswold's assessment.

19.     On April 26, 2012, Mr. Ey executed a document reflecting his formal support of the

panel's original decision not to award Booz Allen the entire contract.

20.     On May 5, 2012, Mr. Ey hosted a housewarming party at his new home in Virginia.

Mr. Ey invited over 80 people from the CAO, including Mr. Moe and Larry Toperoff,

the Chief of Procurement of the CAO, along with the private contractors and

personnel who supported the Business Continuity and Disaster Recovery Office.

21.     The entire CAO was aware of Mr. Ey's housewarming party. Prior to the
housewarming party, not one person at the CAO raised any issue(s) with regard to the
housewarming party. Mr. Toperoff, Mr. Griswold, and Mr. Moe, as well as some of
the Booz Allen contractors, attended the party.

22.     The invitation for the housewarming party specifically advised guests that no presents
should be brought or would be accepted. No business was discussed at the party, and
in particular, no discussion about the bidding or awarding of the Booz Allen Contract
took place.

23.     On May 7, 2012, the members of the review panel for the Booz Allen Contract were
given exit interviews. The interviews should have taken place on May 4, 2012, but
did not due to delays by the Chief of Procurement's office. During his interview, Mr.
Ey was specifically asked about any socialization he had with any contractors. Mr. Ey
fully disclosed all relevant information concerning the housewarming party in
response. Mr. Ey was advised that the party and any lunches or other types of
socializing not involving undue influence were not a concern.

24.     On May 7, 2012, Mr. Toperoff informed Mr. Ey that he was going to extend the Booz
Allen Contract instead of awarding portions of the contract to other bidders, as the
panel had recommended. The reason given for the extension was that there was not
enough time to have the new staff in place by the June 13, 2012 expiration of the
Booz Allen Contract.

   **IV.    Mr. Ey's Termination.**

25.     On May 16, 2012, shortly before 5:00 p.m., Mr. Ey was summoned to a meeting with
Mr. Strodel and Mr. Moe. Mr. Strodel and Mr. Moe, were, at all times material hereto

acting within their scope of employment with the CAO. At the meeting, Mr. Strodel stated that he had lost faith in Mr. Ey's ability to manage his assets. When Mr. Ey asked Mr. Strodel to elaborate, Mr. Strodel explained that he believed that Mr. Ey had improperly interacted with Booz Allen's private contractors in the following ways:

   a.   By inviting them to the May 5, 2012 housewarming party; and

   b.   By soliciting them to support Mr. Ey's charitable, veteran centric softball
         team.

26.   Contrary to what Mr. Ey was told during his exit interview in relation to the Booz Allen Contract review committee, and despite never having raised any objection to Mr. Ey hosting his housewarming party prior to the party being given, Mr. Strodel stated he was concerned that Mr. Ey's interactions with the Booz Allen contractors created an ethical issue with the bidding process on the Booz Allen Contract.

27.   At no time did Mr. Ey ever solicit any private contractor, including Booz Allen, to support his charitable, veteran-centric softball team.

28.   Mr. Ey's housewarming party did not create any ethical concerns with regard to the Booz Allen Contract. Indeed, the panel on which Mr. Ey served as a member had already made its recommendation on the Booz Allen Contract before the housewarming party occurred.

29.   Any ethical concerns regarding the Booz Allen Contract could only have centered on Mr. Toperoff's unilateral, personal decision to extend the contract in contrast to the recommendation of the panel on which Mr. Ey served. Mr. Ey played no part in Mr. Toperoff's decision.

7

30.    Upon information and belief, Ms. Carlson had targeted Mr. Ey for termination as an
       older disabled male with a military background, and lobbied Mr. Strodel to terminate
       Mr. Ey on that basis.

31.    Upon information and belief, Mr. Ey's termination was the direct result of Ms.
       Carlson's efforts to remove him based on his gender, and/or age, and/or disability
       with the explanation offered by Mr. Strodel being a mere pretext.

32.    At the May 16, 2012 meeting, Mr. Strodel stated that Mr. Ey had until May 18, 2012
       at 5:00 p.m. to decide whether he would resign voluntarily or be terminated.

33.    On May 17, 2012, Mr. Ey's counsel sent Mr. Strodel a letter setting forth Mr. Ey's
       severance requests.

34.    Also on May 17, 2012, Mr. Ey signed and delivered to Mr. Moe a resignation letter,
       which met with Mr. Moe's approval.

35.    Before 9:00 a.m. on May 18, 2012, Mr. Strodel informed Mr. Ey that he was being
       terminated immediately, rather than permitting Mr. Ey to resign at 5:00 p.m. as
       previously discussed.

## COUNT I
**(Discriminatory Discharge Based Upon Gender in Violation of 2 U.S.C. § 1311)**

36.    Plaintiff hereby incorporates the allegations in Paragraphs 1 through 35 as though set
       forth herein.

37.    The CAO's termination of Mr. Ey in May of 2012 was improperly and
       discriminatorily based on his gender.

38.    Any purported justification for Mr. Ey's termination was pretextual, and designed to
       conceal the true discriminatory motive underlying his discharge.

2198696v.1

39.     The CAO's acts and intentions were malicious, and in willful, wanton, and/or reckless disregard of Mr. Ey's rights.

40.     As a direct cause of the CAO's discriminatory acts, Mr. Ey suffered and continues to suffer damages, including, but not limited to loss of income and other economic benefits, job search costs, the loss of future employment opportunities, impairment of future earning capacity, and damage to his professional reputation.

**COUNT II**
**(Discriminatory Discharge Based Upon Age in Violation of 2 U.S.C. § 1311)**

41.     Plaintiff hereby incorporates the allegations in Paragraphs 1 through 40 as though set forth herein.

42.     The CAO's termination of Mr. Ey in May of 2012 was improperly and discriminatorily based on his age.

43.     Any purported justification for Mr. Ey's termination was pretextual, and designed to conceal the true discriminatory motive underlying his discharge.

44.     The CAO's acts and intentions were malicious, and in willful, wanton, and/or reckless disregard of Mr. Ey's rights.

45.     As a direct cause of the CAO's discriminatory acts, Mr. Ey suffered and continues to suffer damages, including, but not limited to loss of income and other economic benefits,  job search costs, the loss of future employment opportunities, impairment of future earning capacity, and damage to his professional reputation.

**COUNT III**
**(Discriminatory Discharge Based Upon Disability in Violation of 2 U.S.C. § 1311)**

46.     Plaintiff hereby incorporates the allegations in Paragraphs 1 through 45 as though set forth herein.

47.     The CAO's termination of Mr. Ey in May of 2012 was improperly and
        discriminatorily based on his disability.

48.     Any purported justification for Mr. Ey's termination was pretextual, and designed to
        conceal the true discriminatory motive underlying his discharge.

49.     The CAO's acts and intentions were malicious, and in willful, wanton, and/or
        reckless disregard of Mr. Ey's rights.

50.     As a direct cause of the CAO's discriminatory acts, Mr. Ey suffered and continues to
        suffer damages, including, but not limited to loss of income and other economic
        benefits, job search costs, the loss of future employment opportunities, impairment of
        future earning capacity, and damage to his professional reputation.

**WHEREFORE**, Plaintiff Carl S. Ey prays for judgment in his favor as against the Office
of the Chief Administrative Officer of the United States House of Representatives, awarding him
the following relief:

A.  Compensatory damages, including back pay, in an amount to be determined by this
    Court;

B.  Reasonable attorneys' fees and costs;

C.  Any other relief this Court deems necessary and just.

2198696v.1

Respectfully submitted,

By:  */s/ Clifton M. Mount*
Clifton M. Mount (DC Bar No. 417462)
cmount@jackscamp.com
James N. Markels (DC Bar No. 982476)
jmarkels@jackscamp.com
JACKSON & CAMPBELL, P.C.
1120 Twentieth Street, N.W.
South Tower, Third Floor
Washington, D.C. 20036
Phone: (202) 457-1610
Facsimile: (202) 457-1678
*Attorneys for Plaintiff Carl S. Ey*

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all issues so triable.

By:  */s/ Clifton M. Mount*
Clifton M. Mount

2198696v.1