UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARL S. EY,

    Plaintiff,

v.

OFFICE OF THE CHIEF ADMINISTRATIVE
OFFICER OF THE UNITED STATES HOUSE
OF REPRESENTATIVES,

    Defendant.

Civil Action No. 12-1733 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

The plaintiff Carl S. Ey initiated this employment discrimination suit, under the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1301 *et seq.*, against the defendant Office of the Chief Administrative Officer ("CAO" or "the defendant") of the United States House of Representatives ("H.R."), after the plaintiff's termination from his position as the H.R.'s Director of Business Continuity and Disaster Recovery. Am. Compl., ECF No. 3, at 2. The plaintiff alleges that he was wrongfully terminated based on "age, gender, and disability-based discrimination." *Id.* Pending before the Court is the defendant's Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. ECF No. 8. For the reasons set forth below, the defendant's motion will be granted.

## I. BACKGROUND

### A. Factual Allegations

The plaintiff is a retired Army Lieutenant Colonel, who is "medically rated as a 100% service-connected disabled veteran"[1] and over 45-years-old. Am. Compl. ¶ 1.[2] In January 2011, the plaintiff was hired as Director of Business Continuity and Disaster Recovery with the CAO, a position he held until he was fired on May 18, 2012. *Id.* ¶¶ 4, 36. The plaintiff's immediate supervisor was the CAO Chief Information Officer Nelson Moe ("Moe"), whose superior was the Chief of CAO, Dan Strodel ("Strodel"). *Id.* ¶ 7. During his almost eighteen month employment period, the plaintiff received one performance evaluation that rated his performance as "excellent, which is the highest rating achievable." *Id.* ¶ 6. This evaluation was apparently provided in a letter, dated February 22, 2012, from Strodel that was delivered by Moe "commending him on his performance of his duties and informing [him] that he would be receiving a raise as a result of his performance." *Id.* ¶ 7.

In February 2011, Stacy Carlson ("Carlson") was appointed Deputy Chief Administrative Officer of the CAO. *Id.* ¶ 9. The plaintiff alleges that Carlson "began 'cleaning house,' by targeting men, especially older, strong-willed men with military backgrounds, for termination and replacement." *Id.* ¶ 10. Specifically, the plaintiff alleges that Carlson "asked discriminatory and inappropriate questions of certain male employees to garner bases for eventual termination." *Id.* ¶ 11. While the plaintiff does not state whether he was among the men asked these "discriminatory and inappropriate questions," he alleges that, in August 2011, Carlson asked the

---
[1] The plaintiff makes the conclusory allegation that he is disabled for the purposes of the CAA without providing any information regarding the nature or duration of his disability. *See* Am. Compl. ¶ 1, 48. Based on public filings in another case, the defendant points out that the plaintiff is apparently challenging his military disability rating in another proceeding in this Circuit. *See* Def.'s Reply Mem. to Pl.'s Opp'n to Def.'s Mot. Dismiss (Def.'s Reply), ECF No. 11, at 2 n.2 (citing *Ey v. McHugh*, 12-862 (D.D.C. May 31, 2012)). The Court need not determine whether the plaintiff is, in fact, disabled within the meaning of the CAA to resolve the pending motion.

[2] For the purposes of a 12(b)(6) motion, all factual allegations in the plaintiff's Amended Complaint are assumed to be true. *See Bell Atl. Co. v. Twombly*, 550 U.S. 544, 555-56 (2007).

plaintiff details "of the nature and extent of his rated, service-related disability" and, in a subsequent "reorganization," several of the plaintiff's responsibilities were removed. *Id.* ¶¶ 12-13. The plaintiff asserts that 10 male employees over the age of 45 have been terminated or forced to resign since Carlson was hired. *Id.* ¶ 14.

In 2012, a contract then held by Booz Allen Hamilton ("Booz Allen") to provide workers to the Office of Business Continuity came up for bid and the plaintiff was assigned to serve on a panel with five other persons, including CAO employees Megan Perez ("Perez") and Sarah Parker ("Parker"), to determine which bid to accept. *Id.* ¶ 15–16. At the time, the plaintiff supervised five private contractors, who were all employed by Booz Allen, and two CAO employees. *Id.* ¶ 5.[3] The panel recommended that the five-position contract be split, with Booz Allen receiving three slots and other bidders receiving the other two slots. *Id.* ¶ 17. The plaintiff "executed a document reflecting his formal support of the panel's" decision. *Id.* ¶ 19. Nevertheless, the CAO Chief of Procurement elected to extend the contract to Booz Allen only, for all five positions. *Id.* ¶ 24.

After the panel had completed its work but before the award was announced or the panel members were given their exit interviews, the plaintiff held a party at his home in Virginia to which more than eighty CAO employees were invited, including the plaintiff's fellow panel members Perez and Parker and Booz Allen contractors. *Id.* ¶¶ 20–21. The "entire CAO was aware of [the plaintiff's] housewarming party" and there was no discussion of the bidding for or

---

[3] While the plaintiff does not identify in the Amended Complaint the names of the two CAO employees whom he supervised or the positions of the other members on the bid review panel, the defendant has submitted an affidavit of Jason Hite, the Chief of Human Resources for the CAO, indicating that Perez was directly supervised by the plaintiff and Parker was a non-supervisory employee, who was not in the plaintiff's chain of command. Def.'s Mot. Dismiss, ECF No. 8-2, Aff. of Jason Hite, ¶¶ 4–5. This information is immaterial and not relied upon to resolve the pending motion, however.

awarding of the Booz Allen contract at the party. *Id.* ¶ 21–22. Several Booz Allen contractors, as well as Perez and Parker, attended the party. *Id.* ¶ 21.

Less than two weeks after the party, on May 16, 2012, the plaintiff was summoned to a meeting attended by Strodel and Moe, at which meeting Strodel advised the plaintiff that he "had lost faith in [the plaintiff's] ability to manage his assets" and that the plaintiff would be terminated. *See id.* ¶¶ 25, 33. More specifically, Strodel told the plaintiff "he believed that [the plaintiff] had improperly interacted with private contractors" by inviting them to the plaintiff's party and "[b]y soliciting private contractors to support [the plaintiff's] charitable, veteran-centric softball team." *Id.* Notably, the plaintiff does not allege that Carlson was present at this meeting or otherwise involved in it. Nevertheless, the plaintiff alleges, upon information and belief, that Carlson "lobbied Mr. Strodel to terminate" the plaintiff due to discriminatory animus and that the explanation provided by Strodel was "mere pretext." *Id.* ¶¶ 31-32. The plaintiff denies soliciting any private contractors, including Booz Allen, for his softball team. *Id.* ¶ 27. He also makes plain his disagreement with his supervisors' assessment that his housewarming party "create[d] any ethical concerns with regard to the Booz Allen Contract," *id.* ¶ 28, citing that the panel on which the plaintiff served "had already made its recommendation …before the housewarming party occurred," *id*., and that the plaintiff "played no part" in the "decision to extend the contract in contrast to the recommendation of the panel on which [the plaintiff] served." *Id.* ¶ 30. The plaintiff further notes that fellow panel members Perez and Parker were not disciplined for attending the party. *Id.* ¶ 29.

Although the plaintiff alleges he was initially given the option of resigning or being terminated, he was ultimately terminated on May 18, 2012. *Id.* ¶¶ 33–36.

4

### B. Procedural History

The instant suit was filed in October 2012, *see* Compl., ECF No. 1, and the plaintiff amended the complaint by right shortly thereafter. *See* Am. Compl. The Amended Complaint alleges three causes of action under the Congressional Accountability Act ("CAA"): "Discriminatory Discharge" based upon gender, Am. Compl., ECF No. 3, ¶¶ 37–41; age, *id.* ¶¶ 42–46; and disability, *id.* ¶¶ 47–51. The plaintiff demands "compensatory damages, including back pay" and "[r]easonable attorneys' fees and costs." *Id.* at 10.

The Court now turns to the defendant's motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Amended Complaint for failure to state a claim. Def.'s Mot. Dismiss Pl.'s Am. Compl. ("Def.'s Mot. Dismiss"), ECF No. 8.[4]

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); FED. R. CIV. P. 8(a). A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Although "detailed factual allegations" are not required to

---

[4] After briefing on the defendant's pending motion was ripe, the plaintiff filed a "Supplemental Memorandum in Opposition of Defendant's Motion to Dismiss," ECF No. 12, that sought "leave to file an amended complaint to cure any perceived deficiencies" if the Court grants the defendant's Motion to Dismiss. *See* Pl.'s Supp. Mem. Opp'n Def.'s Mot. to Dismiss ("Pl.'s Supp. Mem. Opp'n"), ECF No. 12, at 2. The plaintiff filed no motion for leave to file a second amended complaint, nor submitted with his motion a copy of the proposed second amended complaint, as required by Local Civil Rules 7(i) and15.1. Furthermore, in his supplemental memorandum, the plaintiff does not offer any hint of how he would amend his complaint to cure the deficiencies in his Amended Complaint pointed out in the defendant's moving papers. *See James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss."). Having already amended his complaint once, the Court sees no need to give the plaintiff a third bite at this proverbial apple, particularly after the defendant's motion to dismiss is fully briefed. The plaintiff's request to file a second amended complaint is denied.

withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief." *Twombly,* 550 U.S. at 555 (alteration in original). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 557) (alteration in original). The Supreme Court stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 556).

## III. DISCUSSION

The plaintiff brings his discrimination claims under the CAA, which, in relevant part, applies Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, "to the legislative branch of the Federal Government." 2 U.S.C. §§ 1302(a)(2)–(3).[5] Claims of discrimination under the CAA are analyzed under the familiar three-part framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Howard v. Office of the Chief Admin. Officer of the U.S. House of Representatives,* 2013 U.S. App. LEXIS 13273 at *21 (D.C. Cir. June 28, 2013) (applying *McDonnell Douglas* framework to employment discrimination suit brought under CAA); *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 492–94 (D.C. Cir. 2008); *Herbert v. Architect of the Capitol*, 839 F. Supp. 2d 284, 291 (D.D.C. 2012). Under this framework, upon making out a

---

[5] Under the CAA, complainants are required to exhaust their administrative remedies by undergoing counseling and mediation prior to filing suit. *See* 2 U.S.C. §§ 1402-03, 1408; *see also Blackmon-Malloy v. United States Capitol Police Bd.*, 575 F.3d 699, 705 (D.C. Cir. 2009) (finding the counseling and mediation exhaustion requirements to be jurisdictional). The defendant does not dispute that the plaintiff exhausted his administrative remedies as to the termination claim, as required by the CAA. *See* Def.'s Reply at 13–14.

6

*prima facie* case of discrimination, which is then countered by the employer's nondiscriminatory explanation for its actions, the plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision." *Howard*, 2013 U.S. App. LEXIS 13273 at *21 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). When "'the employer asserts a legitimate, non-discriminatory reason' for an adverse employment action, the *prima facie* case 'drops out of the picture,' and a plaintiff must simply prove 'that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin.'" *Ponce v. Billington*, 679 F.3d 840, 844 (D.C. Cir. 2012) (quoting *Brady*, 520 F.3d at 493–94).

While a plaintiff need not expressly allege in the complaint that the explanation for the adverse employment action was pretext, *see Ponce*, 679 F.3d at 845, in this case, the plaintiff included in his amended complaint allegations regarding both the defendant's explanation for the plaintiff's termination, which is indisputably an adverse action,[6] and the reasons for the plaintiff's belief that the stated explanation was pretextual. Am. Compl.¶¶ 25, 32. Thus, the key question before the Court is whether, to survive the defendant's motion to dismiss, the plaintiff has sufficiently pled facts to sustain his claim that the defendant's explanation for his termination was pretextual and that his termination was discriminatory based upon his allegedly protected status as a man, who is older than 45 with a disability. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). The plaintiff has failed to do so.

Putting aside the conclusory or speculative allegations in the Amended Complaint and the factual allegations about his protected status, the plaintiff's factual allegations essentially boil down to the following: (1) his second or third-level supervisor, Carlson, asked some unknown

---

[6] The defendant does not dispute that the plaintiff suffered an adverse employment action with his termination. *See* Def.'s Mem. Supp. Mot. Dismiss Pl.'s Am. Compl. ("Def.'s Mem. Supp."), ECF No. 8-1, at 14 ("CAO does not dispute that Plaintiff has alleged the first essential element of a discrimination claim").

number of other male employees "discriminatory and inappropriate questions . . . to garner bases for eventual termination," Am. Compl. ¶ 11; (2) Carlson asked the plaintiff "for details of the nature and extent of his" disability, which questions the plaintiff neither describes as discriminatory or inappropriate, *id.* ¶ 12; (3) after those questions were asked, the plaintiff's responsibilities were reduced as part of a reorganization, *id.* ¶ 13[7]; (4) after Carlson's appointment, "at least ten male employees" over the age of 45 were terminated or forced to resign, *id.* ¶ 14; (5) the plaintiff's second or third-level supervisor, Strodel, together with the plaintiff's immediate supervisor, Moe, terminated the plaintiff and advised him that the reason for the termination was that he "improperly interacted with private contractors" by inviting them to his housewarming party and soliciting them to support his softball team, *id.* ¶ 25; and (6) two female members of the bid evaluation panel, who attended the party at the plaintiff's home, were not disciplined as he was. *Id.* ¶ 29.

Based on these factual allegations, which the Court assumes to be true, the plaintiff makes three arguments to support his claim that the defendant's proffered reason for his termination was pretext for discrimination: (1) the plaintiff concedes that Booz Allen contractors attended a party at his invitation at a time when Booz Allen's bid was under review by the defendant, but disagrees with his superiors' assessment that the plaintiff's conduct raised any ethical issue sufficient to warrant his dismissal; (2) the plaintiff was treated differently from Perez and Parker, two women who served with him on the bid review panel and also attended the party; and (3) the plaintiff's termination was the culmination of an effort by Carlson to remove him, along with other "older, strong-willed males from the CAO for discriminatory reasons." *Id.*

---

[7] The claims at issue in this case pertain solely to the plaintiff's termination in May, 2012. *See* Am. Compl. ¶¶ 38, 43, 48 (alleging "CAO's *termination* . . . was improperly and discriminatorily based on" gender, age, and disability) (emphasis added). Therefore, no claim for relief due to the reduction in the plaintiff's responsibilities in 2011 is before the Court and, in any event, the plaintiff expressly alleged that his responsibilities were reduced due to a reorganization, not discrimination.

8

¶ 14. As explained below, none of these arguments suffices to defeat the pending motion to dismiss.

> A. **The Plaintiff's Disagreement With The Defendant's Stated Reasons For Termination Is Insufficient To Support A Discrimination Claim**

The plaintiff admits he held a housewarming party, before the results of a competitive bidding process were announced, and that he invited private contractors from one of the bidding firms to that party. *See* Am. Compl. ¶¶ 20–21. Although the plaintiff asserts that no ethical problems were created by having the contractors invited to and present at his party, his allegations indicate that his superiors firmly disagreed with the plaintiff's assessment. *See id.* ¶ 25 ("Mr. Strodel stated that he had lost faith in [the plaintiff's] ability to manage his assets" based in part on his inviting private contractors to his housewarming party). Even if the plaintiff's supervisor were wrong in their view that the plaintiff's conduct breached an applicable ethical standard, this does not amount to discrimination. Thus, even if the plaintiff were correct about his supervisors being wrong, this argument is unavailing to show either pretext or discrimination. "[A]n employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false." *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005); *see also Fischbach v. Dist. of Columbia Dept. of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("[T]he issue is not 'the correctness or desirability of [the] reasons offered' . . . [but] whether the employer honestly believes in the reasons it offers.'") (alterations in original; citations omitted).

Moreover, the plaintiff's own disagreement with his supervisors' view is certainly not sufficient to establish pretext or discrimination. *See Robertson v. Dodaro*, 767 F. Supp. 2d 185, 192 (D.D.C. 2011) ("an employee's subjective assessment of her own performance is insufficient to establish such pretext evidence"); *Dorns v. Geithner*, 692 F. Supp. 2d 119, 135 (D.D.C. 2010)

(summary judgment to employer granted because "the plaintiff ha[d] produced no evidence beyond her own subjective opinion that she performed at a higher level" than her performance reviews reflected).

The Court takes judicial notice of the GUIDELINES FOR PROCUREMENT OF GOODS AND SERVICES FOR THE U.S. HOUSE OF REPRESENTATIVES ("the Guidelines"), under which the CAO operates. *See* http://www.house.gov/content/cao/procurement/ref-docs/guidelines.pdf (last visited Sep. 9, 2013).[8] The Guidelines state that "[t]ransactions relating to the expenditure of public funds require the highest degree of public trust and impeccable standard of conduct." *Id.* § I(F). The Guidelines also state that conflicts of interests must be avoided in the procurement of contracts. *Id.* § I(G). As recounted in the plaintiff's factual allegations, the Chief Administrative Officer of the CAO apparently articulated to the plaintiff that he perceived failings in the plaintiff's compliance with the high ethical standard expected, and it makes sense that supervisory CAO employees at the Director level, such as the plaintiff, would be held to the highest standards to serve as a model for other employees. This is particularly the case when the plaintiff "manag[ed] . . . assets" including private contractors. Am. Compl. ¶ 25. Strodel detailed the plaintiff's failing to avoid the appearance of conflicts of interest by inviting private contractors to his home, while these contractors were seeking a contract for which the plaintiff had been tasked to evaluate competing bids. In these circumstances, set forth in the factual allegations, the plaintiff's supervisors' explanation is not irrational since the plaintiff's conduct could reasonably create the appearance of a conflict of interest. In any event, it is not the Court's

---

[8] Although the defendant invites the Court to convert the pending Motion to Dismiss into a motion for summary judgment to allow consideration of, *inter alia*, the Hite Affidavit and the Guidelines, the Court need not do so. As previously stated, the Hite Affidavit need not be considered to resolve the pending motion, and the Court may take judicial notice of public records within a 12(b)(6) context. *See Covad Commc'ns Co. v. Bell Atl. Co.*, 407 F.3d 1220 (D.C. Cir. 2005) (taking judicial notice of "facts on the public record" "as a court may do upon a motion to dismiss"); *Phillips v. Bureau of Prisons*, 591 F. 2d 966, 969 (D.C. Cir. 1979) ("[W]hen passing on a motion attacking the legal efficacy of the plaintiff's statement of his claim, the court may properly look beyond the complaint only to items in the record of the case *or to matters of general public record*.") (emphasis added).

place to be "super-personnel department that reexamines [the defendant's] business decisions," such as when the appearance of a conflict of interest may or may not exist. *Fischbach*, 86 F.3d at 1183 (quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986)). Therefore, the plaintiff's first argument is unpersuasive.

### B. Two Women, Perez and Peters, Were Not Similarly Situated To The Plaintiff

The plaintiff highlights that two women members of the contract review panel attended his housewarming party and were not disciplined. *See* Am. Compl. ¶ 29. In order for this allegation to support the plaintiff's claim, he would have to allege that these two women, Perez and Parker, were "similarly situated" to the plaintiff such that "all of the relevant aspects of [his] employment situation were 'nearly identical' to those of" the plaintiff. *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999); *see also George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005). "The identified employee must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them." *Wilson v. Lahood,* 815 F. Supp. 2d 333, 338-339 (D.D.C. 2011) (internal quotations and citation omitted).

The plaintiff's own allegations defeat his implied assertion that Perez and Parker were similarly situated to the plaintiff. The plaintiff alleges that he was the Director of Business Continuity and Disaster Recovery at CAO and in charge of two CAO employees and the five contract positions that were being awarded. Am. Compl. ¶ 5. By definition, Perez and Parker could not be similarly situated to the plaintiff because the plaintiff, as sole director (not co-director) obviously had duties Perez and Parker did not. *See Barbour v. Browner*, 181 F.3d 1342, 1345–46 (D.C. Cir. 1999) (finding two federal employees not similarly situated where they were in different pay grades and one had "more numerous and more weighty" duties than the

11

other). Therefore, because Perez and Parker were not similarly situated to the plaintiff, his comparison to the way they were treated is irrelevant to evaluating his treatment.

Significantly, even if Perez and Parker were similarly situated to the plaintiff in their work responsibilities, they did not engage in similar conduct. The plaintiff alleges that he held the party at his home and invited the attendees, including Perez and Parker. Am. Compl. ¶¶ 20–22. To demonstrate discrimination based on differing treatment, the plaintiff must show the "similarly situated" individuals were "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Phillips v. Holladay Prop. Servs.*, 937 F. Supp. 32, 37 (D.D.C. 1996) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *see also Wilson*, 815 F. Supp. 2d at 338-39. Perez and Parker, as party attendees, did not engage in "the same conduct without such differentiating . . . circumstances" as the plaintiff because the plaintiff was the *host* of the party and *invited* the contractors to attend. Am. Compl. ¶ 20. The plaintiff does not allege that Perez and Parker were involved in any way with the planning of the party, compiling the invitation lists, or extending the invitations. Therefore, because Perez and Parker did not engage in similar conduct and were not similarly situated, the plaintiff's second line of argument fails.

### C. The Allegations Purportedly Showing Discriminatory Intent by Carlson are Wholly Insufficient

Assuming, *arguendo*, that all of the plaintiff's allegations are true, there is no factual link, even a tenuous one, between those alleged facts and the plaintiff's conclusions regarding Carlson. Despite the allegation that Carlson was not one of his two supervisors present at the meeting where he was terminated, the plaintiff squarely places the blame for his dismissal on Carlson, alleging that his "termination was the direct result of Ms. Carlson's efforts to remove him" based on discriminatory animus. Am. Compl. ¶ 32. Notably, the plaintiff makes no

12

allegation of discriminatory animus against his superiors, Strodel and Moe, who were the people who allegedly actually fired him.[9] Indeed, it almost appears as if the plaintiff picked out a woman from among his superiors to blame for his termination in order to shoehorn into his complaint discrimination based on his gender since, otherwise, the plaintiff would be in the position of alleging gender discrimination by two men against him.

The plaintiff does not provide any factual basis to show that Carlson had any role in the decision to terminate him or was otherwise involved in his termination. Am. Compl. ¶ 10. The only alleged interaction between the plaintiff and Carlson that the plaintiff cites as evidence of Carlson's discriminatory animus is that, in August, 2011, almost ten months before the plaintiff's termination, Carlson asked questions regarding the plaintiff's disability. *Id*. ¶ 12. This allegation is insufficient to support a claim of discrimination for at least three reasons. First, nothing about this alleged interaction suggests anything untoward, let alone discriminatory animus, on the part of Carlson. The plaintiff does not even allege that this interaction was inappropriate or discriminatory. *Id.* Second, even if the plaintiff was made uncomfortable by this interaction with Carlson, which he does not allege, that would not be enough to support a discrimination claim. *See Hampton v. Vilsack*, 760 F. Supp. 2d 38, 51 (D.D.C. 2011) (noting it "is not the law" that inappropriate remarks that had "no relation to any alleged misconduct by [the] plaintiff automatically taint[s] any and all actions" taken by the speaker in the future); *see also Sewell v. Hugler*, No. 08-5079, 2009 WL 585660, at *1 (D.C. Cir. Feb. 25, 2009) (finding

---

[9] Any allegation that Strodel and Moe terminated the plaintiff due to discrimination would be "seriously undercut" by the plaintiff's other allegations that these two supervisors commended him with a positive performance review less than four months before his termination. *See Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011) (fact that employer initially selected plaintiff "is probative evidence that [employer] did not discriminate against [plaintiff] on account of her race or gender when he dismissed her later that year"); *Waterhouse v. District of Columbia*, 298 F.3d 989, 996 (D.C. Cir. 2002) (attributing racial animus to person who hired plaintiff "seriously undercut" claim that plaintiff was terminated on account of her race); *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 206-207 (D.D.C. 2012) (dismissal of complaint where, *inter alia*, a plaintiff claimed that a management decision to give her a temporary detail was discriminatory when the same managers also reinstated her).

stray remarks made in workplace cannot support hostile work environment claim and that "isolated incidents" "cannot form the basis for a Title VII [and by extension, an ADEA] violation") (unpublished) (alteration in original); *Ayala-Gerena v. Bristol Meyers-Squibb Co.*, 95 F.3d 86, 96 (1st Cir. 1996) ("[S]tray remarks in the workplace, particularly those made by nondecision-makers or statements made by decisionmakers unrelated to the decisional process itself" are not direct evidence of discrimination).

Finally, the timing of the alleged interaction with Carlson further undercuts any conclusory allegation that this was indicative of discrimination by the defendant. Specifically, the plaintiff alleges that Carlson asked him questions in August 2011, and over five months later, the plaintiff was given a positive performance evaluation and a raise. *See* Am. Compl. ¶ 7, 12. It defies common sense that if discriminatory actions against the plaintiff began in August 2011 that it would be reflected with commendations five months later, or that an interaction in August 2011 would prompt a discriminatory termination ten months later. *See Warner*, No. 10-1306, 2013 WL 3835116, at *20 (D.D.C. July 25, 2013) (describing allegedly discriminatory statement two years before complaint of employment action as "too remote in time" to allege adequately discriminatory intent); *Norris v. Salazar*, 885 F. Supp. 2d 402, 420 (D.D.C. 2012) (noting in Title VII case that a raise during a period of alleged discrimination cut against inference of discriminatory intent on behalf of plaintiff's supervisors).

To bolster his allegation that Carlson was responsible for his discriminatory termination, the plaintiff asserts that ten older men were fired or forced to resign after Carlson was appointed. Am. Compl. ¶ 14. The assertions that Carlson was somehow responsible for those terminations and, furthermore, that the actions taken against ten other older men were made for discriminatory reasons, are mere "naked assertions" completely devoid of factual support. *Twombly*, 550 U.S.

at 557. Without some sort of context in which to place those terminations, they are virtually useless for determining if the *plaintiff* was terminated for an improper reason. It is true that statistical evidence is "relevant in individual discrimination claims," *Forman v. Small*, 271 F.3d 285, 292 (D.C. Cir. 2001), but here the plaintiff offers no statistics beyond a nebulous number of other men who were "terminated or forced to resign" after Carlson began working for the CAO. Am. Compl. ¶ 14. Without context as to who these other men were, what their positions were, and the circumstances of their firing, the plaintiff has failed to offer any factual support for his claim that these men were terminated for discriminatory reasons. *See Warner*, 2013 WL 3835116, at *23 (holding statistics providing the gender make-up of agency, percentage of each gender in supervisory positions, and percentage of each gender at higher pay grades was not sufficiently precise to provide evidence of discriminatory treatment).

     Here, the plaintiff does not dispute the conduct for which he was fired. Instead, he alleges that Carlson, somehow, "lobbied Mr. Strodel to terminate" the plaintiff and Strodel used the housewarming party as a pretext for the termination. Am. Compl. ¶ 31. The plaintiff does not allege that he saw this "lobbying" or even heard from others about such "lobbying." The Court does not have to accept conclusory allegations as true facts merely because they are plead as such. *See Kowal v. MCI Comm's Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) ("[T]he Court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint."); *Sheller-Paire v. Gray*, 888 F. Supp. 2d 34, 41 (D.D.C. 2012) (holding that "bare legal conclusions" that the plaintiff was terminated because of discriminatory motives was insufficient to survive 12(b)(6) motion); *Norris*, 885 F. Supp. 2d at 419 (D.D.C. 2012) (holding that "entirely conclusory" claims of discrimination "fail to . . . support an inference of discrimination").

at 557. Without some sort of context in which to place those terminations, they are virtually useless for determining if the *plaintiff* was terminated for an improper reason. It is true that statistical evidence is "relevant in individual discrimination claims," *Forman v. Small*, 271 F.3d 285, 292 (D.C. Cir. 2001), but here the plaintiff offers no statistics beyond a nebulous number of other men who were "terminated or forced to resign" after Carlson began working for the CAO. Am. Compl. ¶ 14. Without context as to who these other men were, what their positions were, and the circumstances of their firing, the plaintiff has failed to offer any factual support for his claim that these men were terminated for discriminatory reasons. *See Warner*, 2013 WL 3835116, at *23 (holding statistics providing the gender make-up of agency, percentage of each gender in supervisory positions, and percentage of each gender at higher pay grades was not sufficiently precise to provide evidence of discriminatory treatment).

    Here, the plaintiff does not dispute the conduct for which he was fired. Instead, he alleges that Carlson, somehow, "lobbied Mr. Strodel to terminate" the plaintiff and Strodel used the housewarming party as a pretext for the termination. Am. Compl. ¶ 31. The plaintiff does not allege that he saw this "lobbying" or even heard from others about such "lobbying." The Court does not have to accept conclusory allegations as true facts merely because they are plead as such. *See Kowal v. MCI Comm's Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) ("[T]he Court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint."); *Sheller-Paire v. Gray*, 888 F. Supp. 2d 34, 41 (D.D.C. 2012) (holding that "bare legal conclusions" that the plaintiff was terminated because of discriminatory motives was insufficient to survive 12(b)(6) motion); *Norris*, 885 F. Supp. 2d at 419 (D.D.C. 2012) (holding that "entirely conclusory" claims of discrimination "fail to . . . support an inference of discrimination").

The plaintiff has made no allegations that are more than mere conclusory statements without any factual support that Carlson was involved with his termination. He makes no factual connection between Carlson's allegedly discriminatory questions in 2011 and his termination by Strodel and Moe the following year for, *inter alia*, inviting private contractors from a firm whose bid he was evaluating to a party at his home. The plaintiff has simply failed to allege any facts that Carlson, even assuming that she had discriminatory intent towards the plaintiff, had anything to do with the plaintiff's termination. In the absence of any factual connection, the plaintiff's third line of argument must fail.

\* \* \*

While the stated reason for the plaintiff's termination appears to be a severe response to a perceived ethical breach, the plaintiff's factual allegations simply do not add up to a plausible case of discrimination under the CAA because of the plaintiff's gender, age, or disability status. Therefore, the defendant's Motion to Dismiss for failure to state a claim is granted.

## IV. CONCLUSION

For the reasons stated above, the defendant's Motion to Dismiss, ECF No. 8, pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED. The plaintiff has failed to adequately plead factual allegations to support his claim of discriminatory termination. The plaintiff's request for Leave to Amend contained in his Supplemental Memorandum in Opposition of Defendant's Motion to Dismiss is DENIED as futile.

An appropriate Order accompanies this Memorandum Opinion.

Date: September 10, 2013

_____
BERYL A. HOWELL
United States District Judge